# OAHU RAILWAY & LAND CO., A CORPORATION, *v.* JAMES ARMSTRONG.

## APPEAL FROM CIRCUIT JUDGE, FIRST CIRCUIT.

ARGUED JANUARY 26, 1907.     DECIDED FEBRUARY 11, 1907.

HARTWELL AND WILDER, JJ., AND CIRCUIT JUDGE DE BOLT IN PLACE OF FREAR, C.J.

EVIDENCE.

One with knowledge, though not a surveyor, is competent to testify whether certain lands are included within the description of a deed.

EASEMENTS—*grant.*

A deed of land by a lessor to his lessee, "together with all improvements, privileges, rights, easements or appurtenances to the same belonging or appertaining or held and enjoyed therewith," to which land at the time of the delivery of the deed water was being conveyed across and under other land of the lessor, grants an easement to take such water across such other land substantially in the same manner, mode and location.

ID.—*substantial change not authorized without consent.*

A change in the method of use, dimensions and location of a watercourse over the land of another is a substantial one which cannot be made without the consent of the owner of the servient estate.

ID.—*corporation—consent of superintendent to alteration.*

A superintendent of a railroad, having supervision of matters pertaining to the roadbed, track and operation of its road has no authority to give such consent.

## OPINION OF THE COURT BY WILDER, J.

This is an appeal by plaintiff from a decree dismissing a bill to enjoin the defendant from maintaining a certain iron pipe

used for the conveyance of water across Lehua Avenue, Pearl City, Oahu, and under the railroad track of the plaintiff.

The facts disclosed on the trial of the case were as follows: In February, 1895, defendant leased from plaintiff about seven acres of land on the easterly side of Lehua Avenue at a rental of $20 annually for the first five years and $40 annually for the next five years with an option to purchase the same for $2100 within five years. The lease contained the following clause: "It is understood that this demise includes water from the artesian well in the vicinity of such amount as will flow through a two inch pipe and that all expense of conveying such water will be paid by the lessee." After the execution of the lease defendant conveyed water on to the land at its makai end across Lehua Avenue through a wooden box from what was known as Colburn's well, which water was too salt for purposes of cultivation. Early in 1898 defendant bored a fresh water well about a half mile mauka of Colburn's well and conveyed water from this well on to the land under lease across Lehua Avenue in the same box and also at the mauka portion of the land through a drainage culvert. On March 31, 1900, defendant bought from plaintiff the land under lease for $2100, the deed containing the following words in the habendum: "To have and to hold together with all improvements, privileges, rights, easements or appurtenances to the same belonging or appertaining or held and enjoyed therewith." At the time of the execution and delivery of the deed defendant was taking water from his well on to the land purchased in the two courses referred to. In 1902 defendant discontinued the use of the makai wooden box and took all the water through the mauka culvert. About this time he substituted a wooden pipe for the mauka culvert and changed the location a few feet further mauka. In May, 1905, he substituted an iron pipe for the wooden one. The maintenance of this iron pipe is sought to be enjoined.

Plaintiff is entitled to an injunction unless, as contended by defendant, it failed to prove its ownership in fee of Lehua

Avenue, or, if that be not sustained, that he has an easement to convey this water across Lehua Avenue.

Plaintiff proved a paper title to certain lands in Ewa, Oahu, by the introduction of several documents, and then the secretary of plaintiff's company, who was in charge of its land department, testified that he was familiar with the lands described in those documents so far as they referred to this case and that they included Lehua Avenue, across and under which the pipe line runs. The claim of defendant that this could only be shown by a surveyor and that this witness was not qualified to give such testimony is not sustained. One with knowledge, even though not a surveyor, may testify to such facts. See 3 Wigmore on Evidence, Sec. 1339. The first claim of defendant is therefore overruled.

Plaintiff granted to defendant by deed of March 31, 1900, certain land on the easterly side of Lehua Avenue "together with all improvements, privileges, rights, easements or appurtenances to the same belonging or appertaining or held or enjoyed therewith." At the time of the delivery of the deed defendant as plaintiff's lessee was conveying water on to the land purchased across Lehua Avenue in two watercourses. The language of the deed, particularly the words "held and enjoyed therewith," granted the right to take such water across Lehua Avenue substantially in the manner, mode and location then in use. Those words are not commonly used in conveyancing in this Territory and must be held to have been put in the deed for some purpose and to mean something. They are appropriate for the purpose of creating an easement, and, when considered in connection with the circumstances of the case, such is their effect. That land would be leased in 1895 for ten years at an annual rental of not over $40 with an option in the lease giving the lessee a right to purchase within five years for $2100 shows that the purchaser was to have the right to put water on to the land, because that is what gave value to it. It was shown that the land was practically valueless without this right. Even if the word "appurtenances" alone may not be sufficient to create this easement,

yet the addition of the other words is enough.   See 2 Jones, R. P.,
Sec. 1640, where it is said that "In case the grantor adds words
conveying the privileges and appurtenances 'as now or hereto-
fore used by me,' the inquiry is not as to what is necessary but
what was in use at the time; and in that case it is to the use and
not to the necessity that the evidence should be directed;" also
*Baker v. Bessey,* 73 Me. 472; *Hardy v. Wilson,* 2 B. & C. 96;
*Whalley v. Thompson,* 1 B. & P. 371; *Koostra v. Lucas,* 5
B. & Al. 830; *Watls v. Kelson,* L. R. Ch. Ap. 166.

Furthermore, even if the words in the deed, "held and enjoyed
therewith," did not convey this right, it passed impliedly on the
principle that where the owner of an entire tract sells a portion
the grantee takes that portion with all the benefits and burdens
which appear at the time of the sale to belong to it as between
it and the property which the vendor retains.   This is a rule
which is reciprocal and is a just and reasonable one.   As was
said in *Lampman v. Milks,* 21 N. Y. 507, "The parties are pre-
sumed to contract in reference to the condition of the property
at the time of the sale, and neither has a right by altering
arrangements then openly existing to change materially the rela-
tive value of the respective parts."   See also *Cave v. Crafts,* 53
Cal. 135; *Seymour v. Lewis,* 13 N. J. Eq. 439; *Kelley v.
Dunning,* 43 N. J. Eq. 62; *Toothe v Bryce,* 50 N. J. Eq. 589.

The defendant then having the right to convey water across
Lehua Avenue in the manner, mode and location in use at the
time of the delivery of the deed of March 31, 1900, it remains
to be considered whether there was a substantial change with-
out the consent of plaintiff in the location and method of use
of the watercourses.   "The law is well settled that when one
has acquired * * * an easement in the land of another he
may not substantially alter the mode of using it without the
consent, express or implied, of the owner of the servient estate;
and, where, as in this case, the easement is a right to maintain
a ditch or watercourse, the owner of the dominant estate may
not substantially change the direction or location of such ditch
or watercourse without such consent."   *Scharsch v. Kilauea*

*Sugar Co.,* 13 Haw. 236.  See also *Jennison v. Walker,* 11 Gray, 426.

In the case at bar that there has been a substantial change we have no doubt.  The method of use, the dimensions and location have been substantially altered.  That these changes may have benfited the servient estate is immaterial.  *Allen v. San Jose Co.,* 92 Cal. 139 (15 L. R. A. and note).

The only question remaining is whether this substantial altera- tion was with the consent, express or implied, of plaintiff.  The burden of showing this was on defendant.  He testified that such consent was given orally by Mr. Denison, the general superintendent of the railroad company.  Mr. Denison did not recollect any conversation with defendant in which such con- sent was given.  If it appeared that Mr. Denison had the authority to give such consent as would bind the plaintiff com- pany, we would be inclined to hold from the evidence that he gave it.  But the showing that his authority extended only to the supervision of matters pertaining to the roadbed, track and operation of the road does not warrant a conclusion that he had such authority.  Even the president of a corporation who has the general superintendence of its affairs cannot bring suits in the name of the corporation.  *Waikapu Sugar Co. v. H. C. & S. Co.,* 8 Haw. 343.  It follows, therefore, that a substantial change was made in the location and use of the easement with- out the consent of the owner of the servient estate and that the defendant should be enjoined from maintaining the pipe line in question.

The decree appealed from is reversed and the case is remanded to the circuit judge for such further proceedings as may be proper not inconsistent with this opinion.

*R. B. Anderson* (*Ballou & Marx* on the brief) for plaintiff.
*A. G. M. Robertson* for defendant.